McKinney, J.
delivered the opinion of the court.
This is an attachment bill brought upon the 8th sec. of tho act of 1836, ch. 43. It alledges, in substance, that the complainant, is accommodation endorser of a bill of exchange not due, drawn by the defendant for $1600, on a house in New Orleans, and transferred to the Bank of Tennessee, and that the endorsers, prior to the complainant, are all insolvent. The bill further charges, that the defendant is now the owner of twenty valuable slaves, and that, “complainant is informed and believes, said Cummings is about to remove bis property beyond the limits of this State, or that he will otherwise so conceal the same, that it will be placed beyond the reach of lids creditors; and, in either event, complainant will be compelled to pay said bill of exchange.” The prayer of the bill is, that so much of the property of the defendant may *386 be attached, as will be sufficient to satisfy the debt, and that the same may be sold, and the proceeds thereof applied to" the payment of said bill of exchange at maturity. An attachment issued, and certain slaves and other property of the defendants were: attached. ‘ The defendant appeared at the return term of the process, and moved to discharge and quash the attachment, for want of equity on the face of the bill. This motion was disallowed, and an answer was filed. In the answer, it is expressly denied, that the defendant had any purpose, or intention of removing either himself or his property; or of concealing, or placing the same beyond the reach of his creditors. And he insists on the benefit of - a demurrer, because the facts stated in the bill, do not constitute a sufficient ground in law, for an attachment.
There is evidence on both sides upon the issue of fact, made in the cause, which we do not deem it necessary to notice, except to observe, that we think it .sufficiently supports the charge in the bill. The chancellor decreed for the complainant, and the defendant brings the cause into this court by appeal. The only material question arising on the record, is, whether the facts stated in the bill, constitute a sufficient cause, under the 8th sec. of the act, for the issuance of an attachment. That section is in the following words: — “When any person has, or shall, become bound as accommodation' endorser, or security, and his principal is about to remove, or is removing, or absconding, and carrying off his property, beyond the limits of this State, the provisions of this act shall apply, and upon affidavit being made to the bill, an attachment shall issue at the suit of said endorser, or security, whether the debt for which he is security be due or not.”
' For the defendant it is insisted, that the statement of the cause for an attachment, in the bill is essentially defective, because it is not alledged that the defendant was about to re *387 move himself; that the words “about to remove, or is remov--' ing,” in the connection in which they are used in the section of the act under consideration, necessarily imply, and must be construed to mean, that the “principal” is about to remove himself -and carry off his property; or that he is removing himself, and carrying off his property beyond the limits of this State, and that both these facts must co-exist and be alledged in the bill, to make out a sufficient cause for an attachment. The argument for this construction is, that the act of 1836, gives a new remedy, contrary to the common law, and, therefore, should be strictly construed; and that such was the rule of construction laid down by this court in the case of Conrad vs. McGhee, 3 Yerg. 430, and other cases. On examination, it will be seen, that all the cases referred to were attachments at law, under the act of 1794; and to cases arising under that statute, the rule was properly applied; but this rule can have no application to cases of equitable attachments under the extended and liberal provisions of the act of 1836, and subseqent statutes, enlarging the remedy by attachment.
The attachment under the act of 1794, was very limited and restricted in its operation; it was merely a process -to compel the appearance of the debtor, when the ordinary process of law could not be served on him personally. If he appeared and replevied the property attached, the security required was considered only as special bail to the action. As the law then stood, ample remedy and protection were afforded to the creditor in the common forms of proceeding against his debtor. The “ordinary process” to compel an appearance, was the writ of capias ad respondendum, upon which the defendant was required to give bail for his appearance; and the final process was the fieri facias against the property, and the capias ad satisfaciendum against the person of the debtor, upon *388 winch satisfaction of the judgment might be enforced by imprisonment of his body. But the substitution of the summons instead of the capias ad respondendum, and the abolition of imprisonment for debt, afforded such facilities and strong temptations to debtors to defeat the rights of creditors, and to defy the process of law, by the removal of their property, that the Legislature was impelled by urgent motives of justice and expediency to enlarge and extend the remedy by attachment. And as said by this court, in the case of Runyan vs. Morgan, 7 Hump., “The anxiety of the law making power to afford this remedy so broadly, and with so little restriction' as to the forms of proceeding, calls upon the courts to adopt such a construction, as will carry fully into effect the intention of the Legislature,” and. it may be added, involves the, courts in no inconsistency in having applied a rigid rule in the construction of the act of 1794, and a different one in the exposition of the act of 1836, and the subsequent acts upon the same subject.
The section of the act in question, gives a new remedy to endorsers and sureties. Formerly the endorser, or surety had no remedy until he paid the debt, or judgment was obtained again'st him, and, then, it not unfrequently happened that his remedy was unavailing in consequence of the fraud of the principal in removing his property beyond the reach of his creditors: if the debt were not due, the endorser, or surety, had no remedy whatever. He might know that the principal debtor was removing or about to remove his property, for the avowed purpose of avoiding the payment of the debt for which the endorser or surety was liable, but the law was powerless for his relief. To prevent such flagrant wrong, was the object of the remedy provided in this section. And what is the remedy intended by the legislature? An equitable attachment, not against the person merely, to hinder the *389 principal from removing himself, for, under this section, anatachment for such purpose could not be maintained; but against the property of the principal in order that it shall be held subject to discharge the debt. But, the construction contended for, would render the law wholly inoperative and unmeaning. . If an attachment can only issue, when the principal is about to remove with himself and his property, what was he to do, to evade the law and defeat the rights of the surety? Either, first to remove himself, leaving his property to be removed afterwards in convenient time, through the agency of others; or to send off his property, and remain himself long enough at least to secure his purposes. But what will it avail the surety or endorser, that the principal debtor himself remains, after the removal of his property, when no process can be had against his person to enforce payment of the debt? A construction so absurd, and so manifestly in opposition to the intentipn of the legislature cannot be tolerated. We are of opinion, therefore, that' the allegation in the bill, that complainant is informed and believes, said Cummings is about to remove his property beyond the limits of this State,” constitutes, of itself, a.sufficient cause for an attachment under this section of the act of 1836. The other statement, that he will conceal &c., 'is mere surplusage, not of itself constituting a cause for an attachment under this section,' and, therefore, aside from the provision of the act of 1843, which permits the joinder of two distinct causes in the same attachment does not vitiate. We therefore, affirm the decree of the chancellor with costs.